UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| STRATEGIC SOLUTIONS PARTNERSHIP, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:13-0894 |
| | ) | Magistrate Judge Bryant |
| NEXUS CONSULTING OF ALEXANDRIA | ) | |
| VIRGINIA, LLC. | ) | |
| | ) | |
| Defendant. | ) | |

**M E M O R A N D U M**

This action is before the undersigned for all further District Court proceedings, pursuant to the consent of all parties. (Docket Entry Nos. 18, 22).

Currently pending is a motion to dismiss for lack of personal jurisdiction under F.R.C.P. 12(b)(2) filed by Defendant Nexus Consulting of Alexandria, LLC ("Nexus"). (Docket Entry No. 21). In the alternative, Defendant requests a change in venue to the United States District Court for the Eastern District of Virginia. (*Id.*) For the reasons stated below, Defendant's motion is DENIED.

I.

Nexus is a limited liability company formed under the laws of the Commonwealth of Virginia, with its principal place of business in Alexandria, Virginia. (Complaint, Docket Entry No. 1 at ¶ 2). Strategic Solutions Partnership ("SSP") is a limited liability company formed under the laws of Tennessee with its principal place of business in Franklin, Tennessee. (*Id.* at ¶ 1). Nexus provides on-board security aimed at preventing or deterring piracy of oceanic vessels, and SSP serves primarily as a "service/staffing" company that provides qualified contractors to

Nexus. (*Id.* at ¶ 9; Defendant's Exhibit ("D. Exh.") 2, Docket Entry No. 30-2).[1]

In April 2011, Dustin McKenzie and Andrew Day entered into individual agreements to provide security on excursions for Nexus as subcontractors. (Complaint ¶ 10). In July 2011, McKenzie and Day emailed Nexus President Kevin Doherty that they had "started a company called Strategic Solutions Partnership," and requested that Nexus consider subcontracting future security personnel through SSP. (D. Exh. 1). McKenzie and Day further explained that their "firm is a service/staffing business" aimed at "recruit[ing] and provid[ing] Nexus, and only Nexus, with quality contractors." (*Id.*). McKenzie and Day included resumes of several subcontractors with this email, and all parties met in Las Vegas, Nevada in January 2012 to discuss their future business dealings. (D. Exh. 2; Defendant's Reply, Docket Entry No. 28 at ¶ 4).

From the creation of SSP in summer 2011 to June 2013, "SSP arranged for independent contractors to participate [as security personnel] in excursions for Nexus on thirty-six (36) separate occasions." (Complaint ¶ 15). In return, Nexus paid SSP nearly $700,000.00 in contracting fees, wired to an account at Plaintiff's bank in Franklin, Tennessee. (Second Day Aff., ¶ 5; Surreply Ex. 3). The standard business arrangement between Nexus and SSP took place in several stages. Day would periodically contact Doherty to solicit assignments of security details for ships under contract with Nexus. (*See* D. Exh. 7, 8, 13). Nexus informed Day or McKenzie of its staffing needs, the port of call to which SSP's security personnel should report for embarkation, and the date of embarkation. (Defendant's Reply, ¶ 6). Day or

---

[1] All subsequent citations to "D. Exh." refer to the exhibits appended to Nexus's filing at Docket Entry No. 30.

McKenzie would confirm their willingness to provide security contractors for each excursion by email, and would occasionally communicate regarding travel arrangements provided by Nexus for SSP contractors. (D. Exh. 4; Surreply Exh. 1).

The instant dispute involves unpaid expenses for nine excursions SSP staffed between June and August of 2012. SSP filed suit in this Court on August 4, 2013, alleging breach of contract and unjust enrichment. (Complaint ¶¶ 35-55). SSP claims damages in excess of $160,000.00 for Nexus' failure to pay for security staffing services performed by SSP during June and July of 2013. (Complaint ¶¶ 56-59). Nexus filed the instant motion to dismiss on December 5, 2013.

## II.

Nexus asserts that it is not subject to the personal jurisdiction of this forum. As neither party claims this Court possesses general jurisdiction over the Defendant, this is a dispute over specific jurisdiction. Moreover, as Tennessee's long-arm statute has been consistently understood to extend to the limits of federal due process, this Court need only determine whether exercising personal jurisdiction over the Defendant comports with federal due process requirements. *Bridgeport Music, Inc. v. Still N The Water Publishing*, 327 F.3d 472, 477 (6th Cir. 2003).

To this end, the Defendant must have "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Youn v. Track, Inc.*, 324 F.3d 409, 417 (6th Cir. 2003) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). The Sixth Circuit has established a three-part test for determining whether the exercise of specific jurisdiction over a defendant is consistent with this

3

principle. First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence there; second, the cause of action must arise from the defendant's activities there; and third, the acts or consequences of the defendant's acts must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable. *Southern Machine Co. v. Mohasco Industries, Inc.*, 401 F.2d 374, 381 (6th Cir. 1968).

Defendant disputes only the first part of this test, that it purposefully availed itself of the privilege of acting or causing a consequence in Tennessee. "[P]urposeful availment is the *sine qua non*, or absolutely indispensable, element of personal jurisdiction, and, therefore, disputes about whether or not there is specific personal jurisdiction in a given case often rise or fall on the issue of purposeful availment." *Music City Coach, Inc. v. Star City Coach Works, Ltd.*, 2010 WL 1408272, at *7 (M.D. Tenn. Apr. 2, 2010). If it can be shown that Defendant purposefully availed itself of this forum, then specific personal jurisdiction is proper. If that is the case, Defendant alternatively argues that venue in the Middle District of Tennessee "is not appropriate for both legal and practical reasons." (Docket Entry No. 21-1 at 11).

A. Personal Jurisdiction and Purposeful Availment

Where a defendant contests personal jurisdiction under F.R.C.P. 12(b)(2), the "plaintiff bears the burden of establishing the existence of jurisdiction." *Air Prods. & Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 549 (6th Cir. 2007) (citing *Serras v. First Tenn. Bank Nat'l Ass'n*, 875 F.2d 1212, 1214 (6th Cir. 1989)). Where, as here, the parties have not sought and the Court has not conducted an evidentiary hearing or directed that limited discovery be taken, Plaintiff's burden is "relatively slight," *Am. Greetings Corp. v. Cohn*, 839 F.2d 1164, 1169 (6th

Cir. 1988), and requires "only a *prima facie* showing that personal jurisdiction exists in order to defeat dismissal." *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991). Accordingly, "the pleadings and affidavits submitted must be viewed in a light most favorable to the plaintiff, and the district court should not weigh 'the controverting assertions of the party seeking dismissal.'" *Air Prods. & Controls, Inc.*, 503 F.3d at 549.

"Purposeful availment is 'something akin to a deliberate undertaking,' that is, a deliberate effort by the defendant to direct its activities toward, and to make contact with, the forum." *Music City Coach, Inc. v. Star City Coach Works, Ltd.*, 2010 WL 1408272, at *8 (M.D. Tenn. Apr. 2, 2010) (citing *Bridgeport Music Inc.*, 327 F.3d at 478). "In particular, where a defendant has created 'continuing obligations' between himself and the residents of the forum, he manifestly has availed himself of the privilege of conducting business there." *Air Prods. & Controls, Inc.*, 503 F.3d at 551 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985)). "Although entering into a contract with an out-of-state party *alone* does not automatically establish sufficient minimum contacts, the presence of certain factors in addition to the contract will be found to constitute purposeful availment." *Id.* (citing *Burger King*, 471 U.S. at 478-79). These factors include "prior negotiations and contemplated future consequences, . . . terms of the contract and the parties' actual course of dealing," and "telephone, email, facsimile, and ordinary mail correspondence." *Id.* Notably, "the Supreme Court has 'consistently rejected the notion that an absence of physical contacts can defeat personal jurisdiction.'" *Id.* (citing *Burger King Corp.*, 471 U.S. at 476).

The facts of the instant case suggest that Plaintiff has met its "relatively slight" burden. Despite Nexus' attempts to portray the relationship between the parties as other than corporate

5

(i.e., as between Nexus and two individuals whose business was entirely mobile and was operated from wherever they found themselves), it is clear from the record that: 1) Doherty knew the proposed dealings were between Nexus and SSP rather than its executives as individuals (D. Exh. 1); 2) SSP proposed to act as "a service/staffing business" for Nexus security personnel needs (D. Exh. 2); 3) Andrew Day is SSP's owner and president (D. Exh. 7); 4) McKenzie is SSP's vice president (D. Exh. 5); 5) SSP maintained offices within the 615 area code for Middle Tennessee (D. Exh. 7); 6) Day was domiciled in Tennessee and conducted the business from there (Defendant's Reply, ¶ 5); 7) communications from Day to Doherty originated from, and were returned to, Tennessee. (Defendant's Reply, ¶ 6). These communications define and establish the overall course of dealing between the parties, evidence Nexus' offer of work to SSP on at least thirty-six different occasions, SSP's acceptance of those offers, and, in certain cases, also provide evidence of SSP's performance under the terms of each agreement. (Surreply Exh. 2).

In addition, the vast majority of Nexus' payments were wired to a Tennessee bank account. Of the nearly $700,000.00 Nexus wired to SSP for its services, some twenty-five wire transfers, totaling over $668,000.00, were made over a period of sixteen months into a Wells Fargo bank account, the statements from which reflect as being held in the name of SSP in Franklin, Tennessee, with the designation that "Tennessee account terms and conditions apply." (Docket Entry No. 33)[2] These payments, taken in conjunction with the established history of

---

[2]These bank records support the affidavit testimony of Andrew Day, who testified that "Nexus wired the money to SSP's account at Wells Fargo's Franklin, Tennessee branch." (Docket Entry No. 23-1 at ¶ 11) Nexus, in its most recent filing, submits the third declaration of Kevin Doherty, who declares that plaintiff's assertion that funds were wired to Tennessee "caused [him] to double check with [his] bank regarding the wiring of funds," resulting in

communications between both parties, make it clear that Nexus sought out and accepted a "continuing obligation" with SSP, deliberately directing its performance on that obligation toward Tennessee. Accordingly, similar to the ruling in *Music City Coach*,[3] while the formation of the initial oral contract between the parties might not have entailed sufficient contacts to establish purposeful availment, subsequent dealings between the parties satisfied that threshold.

As to the remaining two parts of the three-part *Southern Machine* test, (1) it appears that the cause of action arises from Nexus' contacts with the forum in that those contacts – payment pursuant to communications with a resident – are related to the operative facts of the controversy, i.e., nonpayment on other obligations established by the same communications; and, (2) it does not appear that there is anything to suggest that this case is the "unusual case" wherein the first two parts of the test are satisfied, and yet the exercise of jurisdiction would nonetheless be unreasonable. *See Music City Coach*, 2010 WL 1408272, at *10.

In sum, plaintiff has made the required *prima facie* showing of jurisdiction in this case.

B. Venue

"A civil action may be brought in . . . a judicial district where any defendant resides . . . [or] a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(b). In compliance with this venue requirement, SSP has

---

confirmation from Nexus' bank "that any and all 'wiring of funds' during the relevant time were all electronically directed from Nexus' bank in Virginia to SSP's bank Wells Fargo in California." (Docket Entry No. 44-1 at ¶¶ 4-5) This declaration, however, is not to be weighed in the analysis because it controverts plaintiff's assertions and proof, which must be viewed in the light most favorable to plaintiff. *Air Prods. & Controls, Inc.*, 503 F.3d at 549.

[3]While Nexus argues in its reply brief (Docket Entry No. 28 at 9) that *Music City Coach* is inapposite because, e.g., it is a "general jurisdiction case" that does not bear on the issue of specific jurisdiction, this is manifestly not so. *See Music City Coach*, 2010 WL 1408272.

asserted that a significant amount of its contractual obligations were performed in Tennessee. As discussed above, this district has a substantial connection to plaintiff's claim because its communications with Nexus and with the independent contractors it provided to Nexus originated here. These communications procuring and facilitating the several contracts upon which Nexus allegedly failed to pay are the underlying transactions, occurring in this district, which make venue appropriate here. *See First of Mich. Corp. v. Bramlet*, 141 F.3d 260, 264 (6th Cir. 1998). Additionally, while it is true that Nexus resides in the Eastern District of Virginia, convenience to Nexus is not the only consideration. Tennessee law is likely to provide the rule of decision here,[4] any documents which exist in support of the parties' claims or defenses are stored electronically and easily accessible from either jurisdiction, and any discomfort experienced by Nexus having to defend against SSP's claims in Tennessee is negligible given the nature of its business. Therefore, venue is appropriate in the Middle District of Tennessee.

III.

In light of the foregoing, the instant motion to dismiss for lack of personal jurisdiction is DENIED, as is Defendant's motion in the alternative for a transfer in venue.

An appropriate Order will enter.

---

[4] Nexus disputes this. However, as this is a Tennessee forum, Tennessee choice of law provisions apply. Tennessee's choice of law rule for contract disputes is *lex loci contractus*, or "law of the place where the contract is made." *See Bridgestone/Firestone N. Am. Tire, LLC v. Harborside Capitol Group, LLC*, 161 Fed. Appx 456, 459 (6th Cir. Tenn. 2005). While the Court need not resolve this issue to decide the instant motion, Plaintiff persuasively argues that, as a contract is created only upon the offeree's acceptance, and Plaintiff accepted Defendant's offers in Tennessee, the contracts were made in Tennessee and therefore Tennessee law will govern.

ENTERED this 30th day of September, 2014.

                                                                                   s/ John S. Bryant  
                                                                                    JOHN S. BRYANT  
                                                                                    UNITED STATES MAGISTRATE JUDGE